```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 UNITED SPECIALTY INSURANCE CO.,

                    Plaintiff,                    MEMORANDUM & ORDER
                                                  17-CV-5736(EK)(VMS)
             -against-

 LIC CONTRACTING, INC.; SEUNGHO KIM;
 and JEEWHA KIM,

                    Defendants.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

    United Specialty Insurance Company sued its insured, LIC Contracting, Inc., and two of LIC's officers, Seungho Kim and Jeewha Kim, seeking a declaratory judgment that it owes no duty to defend or to indemnify them for structural damage Defendants caused to a neighboring building during construction and excavation work.  Defendants now seek leave to amend their Answer to add a counterclaim alleging that United Specialty breached the insurance contract by violating the duty of good faith and fair dealing.  The defendants would seek consequential damages under New York state law, in an amount exceeding the policy limits, based on the insurer's alleged breach.  For the reasons stated on the record following oral argument, and as more fully explained below, that motion is denied.

I. Background

The facts set out here are taken from United Specialty's Complaint and the plaintiffs' complaint in the underlying state-court action. Compl., ECF No. 1; State Compl., ECF No. 6. In the fall of 2015, LIC began excavation and construction work at property on Northern Boulevard in Bayside, New York. Compl. ¶ 23; State Compl. ¶¶ 28-38. The Kims owned this property, together with others, and worked for LIC. Compl. ¶¶ 18, 20; State Compl. ¶ 9.

At some point, an adjacent building began showing signs of structural damage. State Compl. ¶ 33. The owner of that building and a commercial tenant brought suit against LIC, the Kims, and others in New York State Supreme Court in January 2016. *Id.* ¶¶ 1-12. They alleged, among other things, negligence and removal of adjacent and subjacent support. *Id.* ¶¶ 57-100.

LIC held *primary* liability coverage from another insurer, Western Heritage, that is not a party to this lawsuit. Compl. ¶ 5.[1] United Specialty issued LIC an excess liability coverage policy with per-occurrence and aggregate limits of $4

---

[1] In their summary-judgment papers, the parties agree that the Western Heritage policy carried a liability limit of $1 million per occurrence. Defs.' Rule 56.1 Statement ¶ 11, ECF No. 136-27; Pl.'s Rule 56.1 Counterstatement ¶ 11, ECF No. 156-7.

million. *Id.* ¶¶ 27-28. LIC sought coverage from both insurers. *See* United Specialty Letter dated March 30, 2016, ECF No. 136-9.

In July 2017, the state court granted partial summary judgment to the plaintiffs and against LIC as to liability only; those claims were for removal of lateral and subjacent support; violation of New York City's Building Code; negligence; nuisance; and trespass. *211-12 N. Blvd. Corp. v. LIC Contracting Inc.*, No. 700656/16, 2017 WL 11554683, at *3-6 (N.Y. Sup. Ct. June 30, 2017). The Appellate Division reversed the grant of summary judgment with respect to the nuisance claim but otherwise affirmed. *211-12 N. Blvd. Corp. v. LIC Contracting, Inc.*, 128 N.Y.S.3d 551, 562 (App. Div. 2d Dep't 2020).

Meanwhile, in September 2017 (shortly after the trial court granted partial summary judgment), United Specialty filed this action. Compl. ¶ 1. It seeks a declaratory judgment that it owes no duty to defend or to indemnify LIC in the underlying lawsuit because the policy excludes coverage for losses arising from subsidence, *i.e.*, "movement of earth or land." *Id.* ¶¶ 29, 38-47. Defendants answered in December 2017 and did not assert any counterclaims. Answer, ECF No. 20.[2]

---

[2] United Specialty originally also named the underlying plaintiffs as defendants in this lawsuit. Those parties have since settled with United Specialty and are no longer part of this action. *See* Order Dismissing Parties dated August 22, 2022.

3

On January 11, 2018, Magistrate Judge Vera M. Scanlon issued a scheduling order. It provided, among other things, that "[n]o amendment of the pleadings will be permitted after April 28, 2018 unless information unknown to the parties by this date later becomes available to them." Initial Scheduling Order ¶ 5, ECF No. 28. That deadline came and went without any amendment of the pleadings.

The state court tried the issue of damages in the underlying action in February 2022. Defs.' Rule 56.1 Counterstatement ¶ 51, ECF No. 144; Pl.'s Rule 56.1 Reply Counterstatement ¶ 51, ECF No. 151. According to Defendants, on February 25, 2022, the jury awarded the plaintiffs in that action over $7.3 million in damages. Ford Decl. ¶¶ 11, 20; Letter dated March 10, 2022, ECF No. 133. Two weeks later, Defendants filed letters in this Court "request[ing] the Court's permission for LIC Defendants to preserve the right to assert . . . extra-contractual damages, as a result of a verdict in the underlying action." Letter dated March 10, 2022, ECF No. 133; Letter dated March 11, 2022, ECF No. 134. Subsequently, in September 2022, Defendants filed a third letter stating that the parties in the underlying lawsuit had reached a $7 million post-verdict settlement in July. Letter dated September 6, 2022, ECF No. 162. LIC's share of that settlement, which it paid, was

about $5.1 million; the primary insurer and the engineering company contributed the remainder.  *Id.*

Meanwhile, in the first half of 2022, the parties briefed their respective motions for summary judgment, which remain pending.  Defendants' formal motion to amend the Answer followed on October 17, 2022.  They seek to add a counterclaim against United Specialty for its alleged breach of an insurer's duty of good faith and fair dealing, based on its actions during settlement negotiations in the underlying action.  Proposed Am. Answer ¶¶ 57–68, ECF No. 166-5.  As required by this Court's Individual Rules, they have submitted a blacklined Answer identifying the content they seek to add.  *Id.*  That proposed addition is discussed in further detail below.

## II.  Discussion

LIC's motion is denied for two reasons:  First, amendment would be futile because the proposed counterclaim fails to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.  Second, the motion for leave to amend was not timely filed.

**A. The Proposed Amendment Fails to Satisfy the Requirements of Rule 8**

5

1. <u>Legal Standards for Amending Pleadings</u>

Prior to trial, a party may amend its pleading, such as an answer, "as a matter of course" "no later than 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A).[3]

Because more than 21 days have passed since United Specialty served its Complaint, Defendants may amend their Answer "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 12(a)(2). That Rule instructs that courts "should freely give leave when justice so requires." *Id*. However, leave to amend a pleading to add a claim may be denied where doing so would be futile. *Pyskaty v. Wide World of Cars, LLC,* 856 F.3d 216, 224-25 (2d Cir. 2017). Futility arises when the proposed new, amended claim would not survive a motion to dismiss for failure to state a claim. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 119 (2d Cir. 2012); *Carvel v. Cuomo*, 357 F. App'x 382, 383–84 (2d Cir. 2009) (where a "plaintiff has failed to state a claim to relief that is plausible on its face, . . . the district court did not abuse its discretion in denying plaintiff leave to amend").[4]

---

[3] A different timeline applies "if the pleading is one to which a responsive pleading is required." Fed. R. Civ. P. 15(a)(1)(B). Because Defendants' Answer did not assert a counterclaim, no responsive pleading to the Answer was required. *See* Fed. R. Civ. P. 12(a)(1)(B) (requiring an answer to a counterclaim). Thus, this timeline does not apply.

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

Rule 8 of the Federal Rules of Civil Procedure requires that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard "does not require detailed factual allegations," it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* As discussed, a proposed amendment that does not conform to the pleading standards of Rule 8 may be rejected on that basis. *See Carvel*, 357 F. App'x at 383-84.

2. Elements of a Claim of an Insurer's Bad Faith Refusal to Settle

"Because an insurance company has exclusive control over a claim against its insured once it assumes defense of the suit, it has a duty under New York law to act in 'good faith' when deciding whether to settle such a claim, and it may be held liable for breach of that duty." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). This duty is not, however,

breached when the insurer makes a simple mistake in judgment, or acts with mere negligence in its conduct of the litigation.  *See Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 453 (1993).

Instead, "to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer."  *Id*.  The "gross disregard standard . . . require[s] more than ordinary negligence and less than a showing of dishonest motives."  *Id.* at 454*.*

Additionally, "the plaintiff in a bad-faith action must show that the insured lost an actual opportunity to settle the claim at a time when all serious doubts about the insured's liability were removed."  *Id*.  For instance, the plaintiff may show that the underlying plaintiffs were "willing[] to settle for the policy limits."  *Pinto*, 221 F.3d at 401.

Moreover, as noted, "[e]xclusive control over the claim at issue by the insurer is an essential element of any claim for bad faith refusal to settle."  *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 346 (S.D.N.Y. 2021); *accord Combustion Eng'g, Inc. v. Imetal*, 235 F. Supp. 2d 265, 271 (S.D.N.Y. 2002), *as amended on reconsideration* (Jan. 6, 2003)

("[E]xclusive control of settlement is a central factor in determining that the good faith duty applies to insurance contracts."); *see also New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 240-41 (2d Cir. 2002) ("The law pertaining to "bad faith" claims in New York . . . is premised upon time-honored principles of agency, *i.e.,* because insurers typically exercise complete control over the settlement and defense of claims against their insureds, they may fairly be required to act in the insured's best interests."). And "an insurer only has exclusive control over a claim against its insured once it assumes defense of the suit." *McGrath*, 549 F. Supp. 3d at 347 (citing *Fed. Ins. Co. v. N. Am. Specialty Ins. Co.*, 921 N.Y.S.2d 28, 29 (App. Div. 1st Dep't 2011)).

3. The Allegations of the Proposed Counterclaim

Here, the proposed counterclaim is essentially devoid of anything beyond conclusory statements and a recitation of the elements of the claim. The most specific factual allegation contained in the proposed counterclaim is that LIC's "ability to settle the underlying suit for an amount that was well within the limits of [the policy] was impaired due to [United Specialty's] acts and omissions." Proposed Am. Answer ¶ 64. Defendants add that United Specialty "breached its policy by: refusing to honor its terms, mishandling . . . the underlying claim and settlement negotiations; and wrongly refusing to

9

indemnify LIC Defendants in connection with the underlying suit." *Id.* ¶ 67.

But these allegations are conclusory: a party's contention that a counterparty breached a contract because it breached the contract does not satisfy Rule 8's requirements. Rather, a plaintiff "must include non-conclusory references to the duty of good faith and fair dealing and its breach in the Complaint." *Moses v. Apple Hosp. REIT Inc.*, No. 14-CV-3131, 2016 WL 8711089, at *7 (E.D.N.Y. Sept. 30, 2016). And in pleading a claim for breach of the duty of good faith and fair dealing, the simple argument "that each Defendant was obligated by either contract or common law to act in good faith and to deal fairly with plaintiffs is conclusory, and the claim therefore subject to dismissal." *Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 609-10 (S.D.N.Y. 2013).

Moreover, Defendants have failed to plausibly allege at least two of the elements set forth above: that they lost out on an "actual opportunity to settle" the case "at a time when all serious doubts about the insured's liability were removed," *see Pavia*, 82 N.Y.2d at 454, and that United Specialty held "exclusive control" over the defense at the time. For instance, as mentioned, a party seeking to establish a bad-faith claim may allege that the underlying plaintiffs were "willing[] to settle for the policy limits." *Pinto*, 221 F.3d at 401. But Defendants

10

have not set forth any such allegation in the proposed counterclaim, beyond an undefined reference to their allegedly impaired "*ability* to settle the underlying suit for an amount that was well within the limits of [the] policy." Proposed Am. Answer ¶ 64 (emphasis added). The insured's diminished ability to settle is a different thing from the loss of "an actual opportunity to settle" — that is, an offer. *See Pinto,* 22 F.3d at 401 (citing *Pavia*, 82 N.Y.2d at 453-54). Dismissal is thus warranted. *Cf. Tokio Marine v. Macready*, 803 F. Supp. 2d 193, 204 (E.D.N.Y. 2011) (dismissal of bad faith claim on summary judgment was warranted where the insured failed to "come forward with any evidence that [the insurer] offered to settle [the] claims for an amount less than" the policy limit).

Furthermore, Defendants also have not alleged in their proposed counterclaim that United Specialty had "exclusive control" over the defense of the lawsuit, which (as noted) is an "essential element" of a bad-faith claim. In fact, even at this late hour, Defendants suggest otherwise in their Rule 56.1 statement: "Nationwide is providing a defense to LIC in the underlying action under the [primary] Western Heritage Policy. It is also providing a defense to the Kims . . . as agents and officers of LIC." Defs. Rule 56.1 ¶ 13. So not only do Defendants not make sufficient allegations in their proposed counterclaim of United Specialty's exclusive control of the

11

defense, they affirmatively make the opposite in seeking summary judgment.[5] As a consequence, they cannot maintain a bad-faith claim; absent the insurer's having "exercised control or exclusive control over any claim against" the insured, the insured "may not pursue any claim for bad faith denial or coverage or failure to settle independent of its claim for breach of contract." *McGrath*, 549 F. Supp. 3d at 348.

Briefing cannot solve this pleading problem, of course. But even the Defendants' briefs in support of leave to amend do not provide meaningful additional factual content. Their opening memorandum requires the Court to search their summary judgment papers for the relevant facts, contending that the factual predicates underlying their claims for relief "have been largely set forth" there. Defs.' Mem. of Law in Supp. of Mot. to Am. Answer ("Def. Mem.") 3, ECF No. 166-8; *see also id.* at 6 ("LIC Defendants have already set forth facts and argument that underlie their basis for a breach of the implied covenant of good faith and fair dealing in their summary judgment motion papers."). But Defendants' memorandum of law and Rule 56.1 statement in support of their summary-judgment motion total

---

[5] Following the Court's denial of Defendants' motion for leave to amend the answer, the Court held oral argument on the parties' cross-motions for summary judgment. At that oral argument, Defendants conceded that United Specialty "did not assume the defense in the underlying action." That concession further confirms that Defendants would not be able to maintain a bad-faith claim.

nearly 40 pages, and having scoured it for the relevant facts, the best the Court can come up with is the summary of the material undisputed facts on pages 2 through 4 of the memorandum.  That passage states that United Specialty attended a June 2017 mediation "by phone and email," but "as [that] mediation gathered momentum, and the parties were coming closer to resolving the underlying action, United Specialty decided to abruptly exit from the negotiations."  Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Def. Summ. J. Mem.") 2-4, ECF No. 136-1.  Their Rule 56.1 statement adds that during that mediation, United Specialty's representative "decided to cut off any further negotiations," but "nonetheless actively participated in the mediation through emails and telephone communications with [the primary carrier's representative], directing strategy and ultimately causing the settlement negotiations to come to a screeching halt."  Def. 56.1 ¶¶ 37, 107.  Nowhere do the defendants describe an actual opportunity to settle on specified terms.

This does not satisfy the Federal Rules of Civil Procedure.  "Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading for purposes of Rule 12(b)."  *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).  Such allegations "cannot, as a matter of law, cure the deficiencies in [a

13

Complaint]." *Concepcion v. City of New York*, No. 05-CV-8501, 2008 WL 2020363, at *10 (S.D.N.Y. May 7, 2008).

For these reasons, the motion for leave to file an amended Answer is denied on the basis that amendment would be futile.

**B.    The Motion to Amend Was Not Timely Filed**

Even if the proposed amendment satisfied Rule 8, it still comes too late. As noted, leave to amend a pleading is generally "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.*, 318 F.3d at 80; *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and the judge's consent."). "A finding of good cause depends on the diligence of the moving party." *Grochowski*, 318 F.3d at 86 (quoting Fed. R. Civ. P. 16(b)). Moreover, even in the absence of a scheduling order, undue delay can be a "reason[] to deny leave" to amend an answer to add a counterclaim if "bad faith or undue prejudice" is present. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *State Tchrs. Ret. Bd. v.*

14

*Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *see also, e.g.*, *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 61 (E.D.N.Y. 2015).

Defendants effectively seek a modification of Judge Scanlon's Initial Scheduling Order.  As noted, that order set a deadline of April 28, 2018 for amending pleadings, "unless information unknown to the parties by this date later becomes available to them."  Initial Scheduling Order ¶ 5.  But as discussed, Defendants did not file their motion for leave to amend until October 2022, and even their letters "seeking to preserve the claim" were not filed until March 2022.  Thus, the request to amend the Answer comes, at a minimum, about four years late.

Defendants argue that they did not violate the scheduling order because they did not know that damages would exceed their combined $5 million coverage limit until the jury returned its verdict in March 2022.  Def. Mem. 3-4.  But under New York law, "a breach of contract cause of action accrues at the time of the breach," even "though no damage occurs until later."  *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986 (N.Y. 1993).  As the New York Court of Appeals has explained, this is because "nominal damages are always available in breach of contract actions," and therefore "all of the elements necessary to maintain a lawsuit and obtain relief in court [are] present at the time of the alleged breach."  *Id.* at

15

987; *see also Flaherty v. Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 293 (E.D.N.Y. 2010) ("[I]t is well-settled that a breach of contract cause of action accrues at the time that the breach occurs."), *aff'd,* 462 F. App'x 38 (2d Cir. 2012).  This rule applies to "breache[s] of the implied covenant of good faith" as well.  *Ely-Cruikshank*, 615 N.E.2d at 987.

Under this rule, Defendants had knowledge of the claim in 2017, before the Initial Scheduling Order was entered, when United Specialty committed the act that Defendants argue constituted the breach — namely, "actively participat[ing] in the mediation" but then "abruptly exit[ing] from the negotiations."  Defs.' Mem. of Law in Supp. of Mot. for Summ. J. 2-3, ECF No. 136-1; Def. 56.1 ¶ 107.  And Defendants, who concede that they participated in those negotiations (at least through their then-counsel), were aware of that act.  *See* Ford Decl. ¶ 8 ("LIC Defendants . . . took part in a mediation with underlying plaintiff, occurring on June 13, 2017," at which "United Specialty . . . partook.").

Moreover, Defendants certainly were at the least aware of the possibility that a jury could return a verdict of more than $5 million.  After all, it is no secret that juries' verdicts are difficult, if not impossible, to divine.  *See, e.g., Consorti v. Armstrong World Indus., Inc.*, 64 F.3d 781, 786 (2d Cir. 1995) ("One of the most persistent and troublesome

16

problems in the administration of justice in our civil jury system is the unpredictable relationship between different juries' awards, particularly for intangibles such as pain and suffering."); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-CV-3452, 2008 WL 782596, at *4 (S.D.N.Y. Mar. 24, 2008) ("[J]ury assessments of damages are unpredictable."). And in any event, as discussed, a party need not know the full extent of its actual damages for its contract cause of action to accrue.

And, LIC did know, by the time of the scheduling order, that the plaintiffs in the underlying action *sought* damages in excess of $5 million. Specifically, on March 30, 2018, the plaintiffs in the underlying case filed an affidavit opposing a motion to stay the trial in that case and specifically enumerated $7 million in damages, consisting of approximately $3.6 million to rebuild the building, $1.6 million in lost rental income, and $1.5 million in "lost value of SAI [the convenience store]." Aff. in Opp'n to TL Defs.' Mot. to Stay the Trial ¶ 10, ECF No. 168-1. At the very least, then, Defendants were on notice by 2018 that damages could exceed $5 million; nevertheless, they did not seek leave to assert their counterclaim until 2022.

Even aside from the scheduling order, the Second Circuit has upheld the denial of leave to amend a pleading to add a claim where "the defendants had already filed summary

judgment papers, including in support of their motion and in opposition to the plaintiffs' motion, consisting of thousands of pages addressing the existing claims and counterclaims at issue." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 727 (2d Cir. 2010).  The court explained that "the impact of the proposed new claim on the existing proceedings would have been substantial," because "[i]ts assertion would undoubtedly have required the defendants to expend significant additional resources to defend and would have significantly delayed the resolution of the dispute."  *Id.*  The same is true here: the parties' voluminous cross-motions for summary judgment are pending, and although Defendants have indicated that they do not seek to reopen discovery, it is less than clear that United Specialty would not have sought additional documents (or changed its defense strategy) if it had had notice of the proposed counterclaim within some reasonable amount of time after it accrued.

### III. Conclusion

For these reasons, Defendants' motion for leave to amend their Answer is denied.


SO ORDERED.


18

```
                                    /s/ Eric Komitee
                                ERIC KOMITEE
                                United States District Judge
```

Dated:     June 2, 2024
           Brooklyn, New York